UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:23-CV-00086-GNS-HBB

CENTURY SURETY CO.                                                                                       PLAINTIFF

v.

DWIGHT A. HERALD et al.                                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment (DN 33). The motion is ripe for adjudication.

**I.    BACKGROUND**

Plaintiff Century Surety Company ("Century") brought this suit seeking a declaratory judgment that it owes no duty to defend or indemnify various parties in an underlying Kentucky state court action. (Compl. 32, DN 1). The underlying action concerns an oil well worker, Dwight Herald ("Herald"), who was injured by a natural gas explosion at a work site in June 2022. (Compl. Ex. A, ¶ 12, DN 1-1 [hereinafter Herald Compl.]). Herald brought suit in Clinton Circuit Court against his employers, Storm Resources, LLC ("Storm Resources") and Clinton Enterprise, LLC ("Clinton Enterprise"), as well as individuals Storm Burchett ("Storm"), Steve Burchett ("Steve"), Quincey Guffey ("Guffey"), and Harold and Jean Littrell ("the Littrells"). (Herald Compl. ¶¶ 2-7). Storm represents that he is the owner of both Clinton Enterprise and Storm Resources. (Compl. Ex. F, at 10:3-11:12, DN 1-6).[1] Steve, Storm's father, is listed by the Kentucky Secretary of State

---

[1] The Court will utilize the deposition testimony of Storm that was taken in the underlying action. (Compl. Ex. F). Although this testimony would not meet the definition of a "deposition" under Fed. R. Civ. P. 32(a), numerous courts have allowed depositions from other cases to be used as affidavits for a Rule 56 motion for summary judgment. *See Diamonds Plus, Inc. v. Kolber*, 960

1

as the current officer of Clinton Enterprise. (Pl.'s Mot. Summ. J. Ex. 2, DN 33-4). Guffey is one of Herald's coworkers who Herald alleges was onsite during his injury. (Herald Compl. ¶ 16). The Littrells are property owners who leased to Storm Resources the property where Herald sustained his injury. (Compl. Ex. E, at 2, DN 1-5).

Century is a Michigan insurance company that issued insurance policy No. CCP1021739 ("Policy") to Clinton Enterprise that, in part, covers bodily injuries sustained while servicing oil and gas wells. (Compl. Ex. B, at 13-31, DN 1-2). Storm applied for the Policy on behalf of Clinton Enterprise in October 2021, and the Policy was issued to Clinton Enterprise beginning December 13, 2021. (Compl. Ex. C, at 1, DN 1-3; Compl. Ex. B, at 1). Century brought this action in June 2023, naming Herald, Clinton Enterprise, Storm Resources, Storm, Steve, and the Littrells as Defendants (collectively, "Defendants"). (Compl. ¶¶ 2-8). Century has moved for summary judgment, seeking a declaratory judgment that it owes no duty to defend or indemnify Defendants in the underlying state action. (Pl.'s Mot. Summ. J., DN 33). Century claims that the Policy is void and its terms do not provide coverage for Defendants under the circumstances of the underlying action. (Pl.'s Mem. Supp. Mot. Summ. J. 8-18, DN 33-1).

## II. STANDARD OF REVIEW

In determining whether Plaintiff is entitled to summary judgment, the Court must decide whether there is any genuine issue of material fact left for the trier of fact. *See* Fed. R. Civ. P. 56(a). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue

---

F.2d 765, 768 (8th Cir. 1992) ("[A] deposition is at least as good as an affidavit and should be usable whenever an affidavit would be permissible, even though the conditions of the rule on use of a deposition at trial are not satisfied." (quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2142 (1970))); *see also Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966-67 (9th Cir. 1981) ("Rule 56 . . . plainly allows consideration of "affidavits" and we find nothing which requires that term to be construed within the limitations of Rule 32(a).").

of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party meets its burden, then the burden is on the non-moving to provide specific evidence of a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In making this determination the Court must review the evidence cited by the parties, but it may also consider other material in the record such as depositions or documents.  Fed. R. Civ. P. 56(c).  The Court must consider the evidence in the light most favorable to the non-moving party.  *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 837 (6th Cir. 2013).  The non-moving party must do more than provide a "scintilla of evidence" in support of its position; it must present sufficient evidence from which a jury could reasonably decide the issue in its favor.  *Anderson*, 477 U.S. at 252.

It is not required that the non-moving party produce evidence that would be admissible at the trial stage.  *See Celotex Corp.*, 477 U.S. at 323 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").  The non-moving party can offer evidence such as affidavits, declarations, documents, or electronically stored information to show that it will be able to provide admissible evidence at trial.  *See id.* ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) . . . ."); Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse part cannot produce admissible evidence to support the fact.").

### III. JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00.

### IV. DISCUSSION

#### A. Jurisdiction under the Declaratory Judgment Act

This matter is an action for declaratory relief under the Federal Declaratory Judgment Act, which provides in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). Exercise of jurisdiction under the Declaratory Judgment Act is not mandatory. *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)); *see also Travelers Indem. Co. v. Bowling Green Pro. Assocs., PLC*, 495 F.3d 266, 271 (6th Cir. 2007). Therefore, the Court must decide whether it should exercise jurisdiction over this matter. The Sixth Circuit has articulated five key factors for courts to consider in determining whether to exercise jurisdiction over a claim for declaratory relief:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). In balancing the five factors, "[t]he relative weight of the underlying considerations of efficiency, fairness, and

federalism will depend on facts of the case." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008); *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). The parties were ordered to brief the Court on whether jurisdiction should be exercised in the current case based upon these factors. (Order, DN 39). Century, Herald, and the Littrells responded accordingly. (Pl.'s Suppl. Br., DN 42; Def.'s Br., DN 41; Defs.' Br., DN 43). Clinton Enterprise, Storm Resources, Storm, Steve, and Guffey failed to file briefs on this issue.

        1.     *Settlement of the Controversy and Clarification of Legal Relations*

The first two *Grand Trunk* factors assess "(1) whether the declaratory action would settle the controversy" and "(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue . . . ." *Grand Trunk*, 746 F.2d at 326. Because "it is almost always the case that if a declaratory judgment will settle the controversy, . . . it will clarify the legal relations in issue," the inquiries required by these two factors often overlap substantially. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019) (citing *Flowers*, 513 F.3d at 557; *Bituminous Cas. Corp.*, 373 F.3d at 814; *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)).

In cases similar to the one at hand, the Sixth Circuit has split two ways: "One line of cases approve[s] of declaratory actions because they can 'settle the insurance coverage controversy,' while a second line of cases disapprove[s] of declaratory actions because while they 'might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy.'" *Burlington Ins. Co. v. Greenwood Rollerdrome, Inc.*, 420 F. Supp. 3d 632, 638 (W.D. Ky. 2019) (quoting *United Specialty Ins. Co. v. Cole's Place, Inc.*, No. 3:17-CV-00326-TBR, 2018 WL 1914731, at *4 (W.D. Ky. Apr. 23, 2018) (citation omitted) (quotations omitted). "The Sixth Circuit explained that this incongruence results from the 'different factual scenarios'

5

that each line of cases presents." *United Specialty Ins. Co.*, 2018 WL 1914731, at *4 (citing *Flowers*, 513 F.3d at 555). The first line of cases focuses on the insurance controversy rather than the underlying action, where "a technical or legal issue is often at the heart of the coverage controversy, and to the extent the facts of the underlying case matter, they are undisputed." *Id.* (internal quotations omitted) (citation omitted). "In the second line of cases, focusing on the controversy as a whole, resolution of disputed facts in the underlying case will also resolve the disagreement about coverage." *Id.* (internal quotations omitted) (citation omitted). This Court has determined that "declaratory judgment is proper if it will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action." *Argonaut-Midwest Ins. Co. v. Johnson*, No. 3:14-CV-00395-TBR, 2014 WL 6804284, at *2 (W.D. Ky. Dec. 3, 2014) (citations omitted) (internal quotation marks omitted).

The current matter falls under the first line of cases, as the declaratory judgment is based on "purely legal questions" regarding interpretation of Policy terms. *See id.* (citations omitted) (internal quotation marks omitted). The Littrells argue that there are factual disputes in the underlying case, including the employment status of Herald, which mirror disputed facts in this action. (Defs.' Br. 2). Thus, the Littrells contend that "a ruling in this court [on Herald's employment status] runs the potential of being inconsistent as to this important question" in the state court proceeding. (Defs.' Br. 2). This point is not well-taken, as the Court does not need to rule on Herald's employment status to interpret the terms of the Policy.[2] As Century correctly

---

[2] Century has pleaded "alternative claims under Policy exclusions that may be affected by facts to be determined in the state court action." (Pl.'s Br. 6). These facts relevant to Policy exclusions involve determining the employment status of Herald, the cause of his bodily injury, and whether one insured is bringing a claim against another insured. (*See* Pl.'s Mem. Supp. Mot. Summ. J. 20-24). Century contends, however, that this motion for summary judgment "is based on the application [the] [P]olicy's language to undisputed facts." (Pls.' Br. 6). Century is correct, and

6

points out, "[t]he question of whether [Century] is contractually obligated to defend or indemnify any of the defendants in the [underlying action] presents legal issues for this Court to determine 'by comparing the allegations in the underlying complaint with the terms of the insurance policy.'" (Pl.'s Suppl. Br. 6 (quoting *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003))). The viability of the Policy and interpretation of who constitutes an insured party are purely legal questions for the Court to determine. *See Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010) ("It is well settled that the proper interpretation of insurance contracts generally is a matter of law to be decided by a court . . . .")

Defendants argue that "a declaratory judgement would not settle the controversy in the state court. It would merely help to determine who pays the bill if the state court Defendant loses." (Def.'s Br. 2). This issue is precisely what divides the Sixth Circuit's application of the first *Grand Trunk* factor; however, without the need for fact-finding that will "affect the parties in the underlying action[,]" the determination of purely legal questions renders declaratory judgment proper. *Argonaut-Midwest Ins. Co.*, 2014 WL 6804284, at *2 (citations omitted). The Sixth Circuit has stated that "a declaratory judgment regarding coverage does 'settle the controversy,' because it resolves the dispute between the insurer and insured over who will pay for the state-court litigation." *United Specialty Ins. Co.*, 936 F.3d at 397 (citing *Hoey*, 773 F.3d at 760-61) (citations omitted). Similarly, a declaratory judgment in the current case would settle whether Century has a contractual obligation to cover any of the Defendants' costs in the underlying action. This determination would also clarify the legal relations between the parties by determining who is an insured under the Policy. *Id.* at 398 ("Although a federal declaratory judgment does not

---

for reasons stated herein, the Court does not need to consider the Policy exclusion to decide Century's motion for summary judgment.

7

resolve the relative rights of all parties in the state-court litigation, it does determine whether the insurer must continue defending the insured party and whether it will have to indemnify that party should the state-court plaintiff prevail."). The first two *Grand Trunk* factors, therefore, weigh in favor of exercising jurisdiction.

### 2. *Procedural Fencing or Race for* Res Judicata

The third factor considers "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or [is] likely to create a race for res judicata." *Flowers*, 513 F.3d at 558. The Sixth Circuit has explained that this analysis is "meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.'" *Id.* (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). Courts are reluctant to impute an improper motive absent direct evidence of procedural fencing. *See id.* (citations omitted). As the Sixth Circuit has noted, "we generally do not make a finding of procedural fencing if the declaratory-judgment plaintiff filed after the commencement of litigation in state court." *United Specialty*, 936 F.3d at 399. In the current case, Century brought this action after Herald filed his complaint in state court. (*See* Herald Compl. 1). Defendants concede that "there is nothing to suggest that [Century] is seeking relief in this Court for an improper purpose." (Defs.' Br. 2). As such, Century is given "the benefit of the doubt that no improper motive fueled the filing of this action[,]" and the third *Grand Trunk* factor does not weigh against the exercise of jurisdiction. *Bituminous Cas. Corp.*, 373 F.3d at 814.

### 3. *Increased Friction between Federal and State Courts*

The fourth factor is "whether accepting jurisdiction would increase friction between federal and state courts." *Flowers*, 513 F.3d at 559. There are three sub-factors this Court must consider:

8

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

Under the first sub-factor, the Court must determine "whether the state court's resolution of the factual issues is necessary for the district court's resolution of the declaratory judgment." *Flowers*, 513 F.3d at 560. The Sixth Circuit has recognized: "[i]n the context of actions seeking a declaration of the scope of insurance coverage, . . . such questions can sometimes be resolved as a matter of law and do not require factual findings by a state court." *Flowers*, 513 F.3d at 560 (citation omitted). This principle is applicable to the case at hand. Century is not a party to the underlying action, and none of the claims in the underlying action concern insurance coverage. (*See* Herald Compl.). As mentioned above, a determination of the Policy's viability and interpretation of who constitutes an insured are purely legal questions and, in this case, do not hinge on factual findings from the underlying action. The first sub-factor, thus, weighs in favor of exercising jurisdiction.

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. The Sixth Circuit has found that state courts are in a better position than federal courts "to apply and interpret its law" on issues of contract interpretation. *Travelers*, 495 F.3d at 272. "This consideration[,] [however,] appears to have less force when the state law is clear and when the state court is not considering the issues." *Flowers*, 513 F.3d at 560. Indeed, "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is]

9

before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" *Id.* (alterations in original) (citing *Northland Ins. Co.*, 327 F.3d at 454). Here, Century is not a party in the underlying action, and the underlying action does not concern the issue of insurance coverage. (*See* Herald Compl.). The second sub-factor, therefore, does not weigh against exercising jurisdiction.

"The final sub-factor requires the court to determine whether the issue in the federal action implicates important state policies and therefore would be more appropriate for the state court to address." *Secura Ins. Co. v. Gray Const., Inc.*, 661 F. Supp. 2d 721, 730 (W.D. Ky. 2009). Although "state courts are best situated to identify and enforce the public policies that form the foundation of [insurance] regulation[,]" the Sixth Circuit has determined that "not all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them." *Flowers*, 513 F.3d at 561 (internal quotation marks omitted) (quoting *Bituminous*, 373 F.3d at 815; *Northland*, 327 F.3d at 454)). Although a declaratory judgment in this case would require applying Kentucky law, "no state law or policy would be frustrated by [] [this] [Court's] exercise of jurisdiction . . . ." *Northland*, 327 F.3d at 454. Thus, the third subfactor does not weigh against the exercise of jurisdiction, as the mere application of Kentucky state contract law in this instance does not appear to "implicate such fundamental state policies" that would render this Court unfit to analyze the Policy effectively. *Flowers*, 513 F.3d at 561 (citations omitted).

### 4. *Availability of Alternative Remedy*

In considering the final factor, the Sixth Circuit has stated that the district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk*, 746 F.2d at 326. Following a split in precedent regarding whether "the possibility of seeking a

declaratory judgment or indemnity action in state court counsels against the district court exercising jurisdiction[,]" the Sixth Circuit held that "rather than applying a general rule, our inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562.

Defendants contend that "Kentucky provides a procedure to obtain a Declaration of Rights[,] and a state [c]ourt is in a better position to decide issues of state law." (Defs.' Br. 3 (citing *Bituminous*, 373 F.3d at 816)). They are correct, as KRS 418.040 allows plaintiffs to seek a declaration of rights. KRS 418.040. Century acknowledges that it could file a separate claim seeking declaratory relief in state court and concedes that it could also "seek[] to intervene in the [underlying action]." (Pl.'s Br. 12-13). It is not clear, however, whether these two alternative remedies "are better or more effective than a federal declaratory action." *Flowers*, 513 F.3d at 562. In *Flowers*, the Sixth Circuit determined that filing a declaratory action in state court may provide a better remedy because "Kentucky courts are in a superior position to resolve undecided questions of state law . . . ." *Id.* In contrast, the same court determined that intervening in the underlying state action may not be a superior alternative, because "[the plaintiff] would have [] to wait until the liability issue in the case was resolved before determining its obligations . . . ." *Id.* Such is the case here, and Century "should not be forced to wait for an answer until after the state action [is] completed." *Northland*, 327 F.3d at 453. Looking to the alternative remedies that Century has in state court, it is not clear which direction the fifth factor weighs.

The analysis of the five *Grand Trunk* factors demonstrates that it is not improper for the Court to exercise jurisdiction over the current case. At least two of the factors weigh in favor of exercising jurisdiction, and the remaining factors are neutral. The issue for which Century seeks declaratory judgment is fundamentally distinct from the issues in the underlying action, and

11

"considerations of efficiency, fairness, and federalism" weigh in favor of exercising jurisdiction. *See Cole's Place*, 936 F.3d at 396 (internal quotation marks omitted) (citing *Hoey*, 773 F.3d at 759).

### B. Motion for Summary Judgment

Century has moved for summary judgment declaring that it owes no duty to defend or indemnify Defendants under the Policy in the underlying action. (Pl.'s Mem. Supp. Mot. Summ. J. 1). Century bases its motion on four arguments: (1) the Policy is void due to Storm's misrepresentations and omissions in its execution; (2) no named insured under the Policy is entitled to coverage; (3) the Policy does not cover the type of operation that caused Herald's injury; and (4) exclusions within the Policy vitiate any coverage. (Pl.'s Mem. Supp. Summ. J. 8-24). Because the first two bases justify granting summary judgment and do not require additional factual findings, only these arguments will be addressed.

It should be noted that Clinton Enterprise, Storm Resources, Storm, Steve, and Quincey Guffey have failed to respond to Century's motion. Herald filed a response (DN 36), as did the Littrells (DN 35). Neither of these responses, however, disputes Century's alleged facts regarding the misrepresentations of Storm in executing the Policy. Instead, these Defendants argue that Clinton Enterprise is entitled to coverage under the doctrine of reasonable expectations. (*See* Def.'s Resp. Pl.'s Mot. Summ J. 1-2, DN 36; Defs.' Resp. Pl.'s Mot. Summ. J. 2, DN 35).[3] This

---

[3] Defendants also argue that Century's motion for summary judgment is premature, as "proof of service for all named defendants in this matter, specifically Clinton Enterprise, LLC, Storm Resources, LLC, Storm Burchett and Steve Burchett, has not yet been filed with the Court[,] [] no Answers have been filed on behalf of these defendants[,] and there is no attorney of record for [them]." (Def.'s Resp. Pl.'s Mot. Summ. J. 2). Century responded by asserting that it "filed a Verification detailing its service of the Complaint upon all Defendants." (Pl.'s Reply Mot. Summ. J. 2, DN 38). Century's verification of service indicates that all Defendants were served by April 26, 2024, at the latest. (Barry Miller Verification 1-2, DN 37; *see also* Certificate of Service Ex. C, DN 37-3). Additionally, Counsel for all parties, with the exception of Guffey, participated in a

12

argument, however, does not dispute Century's contention that Clinton Enterprise is not entitled to coverage under the explicit terms of the Policy. (*See* Pl.'s Mem. Supp. Mot. Summ. J. 13-15). Regarding arguments (1) and (2), Century has presented evidence establishing the absence of factual issues. (*See* Pl.'s Mem. Supp. Mot. Summ. J. 8-17). Defendants have failed to provide any countervailing evidence. *See Anderson*, 477 U.S. at 256 ("The movant has the burden of showing there is no genuine issue of fact . . . . [The] party opposing a properly supported motion for summary judgment . . . must set forth specific facts showing that there is a genuine issue for trial.").

### 1. *The Insurance Policy is Void*

Century first asserts that it is not required to defend or indemnify any of the Defendants because the Policy was executed under misrepresentations and omissions by Storm. (Pl.'s Mem. Supp. Summ. J. 8-13). Under Kentucky law, "misrepresentations, omissions, and incorrect statements" on the application for an insurance policy can preclude recovery if those representations are:

(1) Fraudulent; or
(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise. This subsection shall not apply to applications taken for workers' compensation insurance coverage.

---

status conference regarding this matter on May 13, 2024 (i.e., three weeks prior to Century filing its motion for summary judgment). (Report, DN 32). Responses to Century's motion were due May 16, 2024—21 days after Century's filing. Fed. R. Civ. P. 56(c)(1)(B). No Defendant has requested an extension of time to file an answer to Century's Complaint or response to Century's motion for summary judgment.

13

KRS 304.14-110. This statute "reflects a public policy requiring those who apply for insurance [to] be honest and forthright in their representations." *Cleaver v. Transamerica Life Ins. Co.*, No. 4:18-CV-00178-JHM, 2021 WL 1650275, at *2 (W.D. Ky. Apr. 27, 2021) (citing *Progressive N. Ins. Co. v. Corder*, 15 S.W.3d 381, 383 (Ky. 2000) (citation omitted) (internal quotations omitted) (alteration in original)). The Sixth Circuit has found that "a fraudulent or material misrepresentation voids a policy *ab initio*." *Am. Gen. Life Ins. Co. v. Est. of Jude*, 825 F. App'x 261, 268 (6th Cir. 2020) (citing *State Farm Mut. Auto. Ins. Co. v. Crouch*, 706 S.W.2d 203, 207 (Ky. App. 1986) (citations omitted)). Furthermore, "a false answer is material if the insurer, acting reasonably and naturally in accordance with the usual practice of . . . insurance companies under similar circumstances, would not have accepted the application if the substantial truth had been stated therein." *Cook v. Life Invs. Ins. Co. of Am.*, 126 F. App'x 722, 724 (6th Cir. 2005) (internal quotation marks omitted) (quoting *Mills v. Rsrv. Life Ins. Co.*, 335 S.W.2d 955, 958 (Ky. 1960)).

Here, Century claims that Storm "clearly made misrepresentations, omissions, and incorrect statements on the application for the Policy" and that "Century relied on these statements when it issued the Policy." (Pl.'s Mem. Supp. Mot. Summ. J. 9-10). Evidence in the record demonstrates that Century is correct. First, Storm indicated in late 2021 that Clinton Enterprise was the applicant for the Policy, and that the company had been in business since January 1, 2017. (Compl. Ex. C, at 1-2). Century provides evidence, however, that Clinton Enterprise had been dissolved in 2019 (i.e., two years before applying for the Policy) by the Kentucky Secretary of State for failing to submit its annual report. (Compl. Ex. C, at 1-2; Pl.'s Mot. Summ. J. Ex. 2). No Defendant denies this fact, and Storm has testified that he was aware of the dissolution and did not take steps to reinstate the organization's registration. (Compl. Ex. F, at 9:6-17). Under Kentucky law, "[a] dissolved limited liability company shall continue its existence but shall not carry on any

14

business except that appropriate to wind up and liquidate its business and affairs . . . ." KRS 275.300(2). Century's representative, Eric Timm ("Timm"),[4] asserts that if Century had known that Clinton Enterprise "had been administratively dissolved . . . prior to its application of insurance and remained in bad standing, it would have declined to issue coverage to the company." (Timm Aff. ¶ 12, DN 33-5).

Second, Storm, on behalf of Clinton Enterprise, represented that there were no "other business ventures for which the coverage is not requested." (Compl. Ex. C, at 3). As mentioned previously, Storm owns multiple companies engaged in oil drilling—namely, Clinton Enterprise and Storm Resources.[5] (Compl. Ex. F, at 11:1-21). Storm apparently intended the Policy to be a "catch all" policy to cover all his oil drilling business ventures, including those not performed by Clinton Enterprise. (Compl. Ex. F, at 9:18-10:14). Storm, however, represented in his Policy application that Clinton Enterprise —the only named insured in the application—was not involved in joint ventures or labor exchanges with any other company. (Compl. Ex. D, at 4, DN 1-4). Despite Storm being the sole owner of both Clinton Enterprise and Storm Resources, they are separate business entities. (See Pl.'s Mot. Summ. J. Ex. 2). In fact, Storm has testified that he makes a distinction between work performed by Clinton Enterprise versus work performed by Storm Resources. (Compl. Ex. F, at 11:16-21). Evidence in the record also indicates that Herald was performing work for Storm Resources—not Clinton Enterprise —when he was injured. (See Compl. ¶ 40; Def.'s Answer ¶ 10, DN 12 (admitting that Herald was paid by Storm Resources); Compl. Ex. E (naming Storm Resources as lessee for the project on the Littrells' property)). Storm

---

[4] Timm is the Vice President of the Special Risks Group division of Century. (Timm Aff. ¶ 1).
[5] It is worth noting that Storm Resources was also not an active entity when Storm applied for the Policy. The Kentucky Secretary of State administratively dissolved the company in 2017 for failing to file its annual report, a fact acknowledged by Storm. (Pl.'s Mot. Summ. J. Ex. 2; Compl. Ex. F, at 14:18-21).

also acknowledged that Storm Resources is not a named insured under the Policy. (Compl. Ex. F, at 68:17-21 ("Q[:] . . . This policy, Clinton Enterprise, LLC is the named insured.· Are you aware of any insurance where Storm Resource, LLC or Storm Burchett DBA were the named insureds? A[:] No, sir.")).

Century asserts that Storm's omissions in his Policy application "were material both to the acceptance of the risk and [the Policy's] scope." (Pl.'s Mem. Supp. Summ. J. 9). According to Timm, "[i]f [Century] had been accurately informed regarding the broadened scope of operations and regarding the additional entities for which coverage were sought . . . it would have either charged a different premium or would have declined to issue coverage altogether." (Timm Aff. ¶ 10). This argument is well-taken. As Century summarizes in its motion: "[these representations] resulted in Century issuing an insurance Policy to a non-existent business entity and has subjected it to exposure for work outside the represented scope, which caused injury to a worker who may have been directed and paid by another business entity that also was not disclosed to Century." (Pl.'s Mem. Supp. Mot. Summ. J. 12). Consistent with KRS 304.14-110(1)-(2), Century has established Storm's misrepresentations and omissions that significantly affected the Policy's premiums and/or issuance. (*See* Timm. Aff. ¶¶ 10-12). These facts remain uncontested. Therefore, Century is entitled to a declaration that the Policy is void, and summary judgment is granted on these grounds. Century's request for a declaratory judgment that it owes no duty to defend or indemnify Defendants in the underlying state court action is also granted.

### 2. *No Defendant Is a Named Insured Entitled to Coverage under the Policy*

Even if the Policy was not void, Century is entitled to summary judgment under the language of the Policy. Century's second argument asserts that no Defendant is a named insured under the Policy. (Pl.'s Mem. Supp. Summ. J. 13-18). The Policy requires Century to "pay those

16

sums that the insured becomes legally obligated to pay as because of 'bodily injury' or 'property damage' to which this insurance applies." (Compl. Ex. B, at 15). Thus, Century is only required to indemnify the Policy's insureds for any bodily injury to which the Policy applies. The Policy explicitly lists Clinton Enterprise as the named insured. (Compl. Ex. B, at 2). The Policy also requires any additional insureds to be listed in the Policy Declarations. (Compl. Ex. B, at 23). If a named insured is an LLC, the Policy covers the LLC's members and managers, "but only with respect to the conduct of [the insured LLC's] business" and "only with respect to their duties as [the LLC's] managers." (Compl. Ex. B, at 23). The Policy also states that "[n]o person or organization is an insured with the respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." (Compl. Ex. B, at 24). Thus, Century only owes a duty to indemnify Defendants if they are named insureds and only if Herald's bodily injury occurred while he was performing work for a named insured (i.e., Clinton Enterprise) at the time of his injury.

As discussed previously, Century has provided uncontested evidence that Herald's injury occurred while he was working for Storm Resources. (*See* Compl. ¶ 40; Def.'s Answer ¶ 10; Compl. Ex. E). Storm has admitted that Storm Resources is not a named insured under the Policy. (Compl. Ex. F, at 68:17-21). In fact, Clinton Enterprise is the only named insured, and it has been established that Century is obligated only to indemnify insureds for injuries occurring within the scope of the insured's operations. (Compl. Ex. B, at 23-24). Century has established that "Clinton Enterprise" was not involved in the accident that caused Herald's injury. (Pl.'s Mem. Supp. Mot. Summ. J. 13). No Defendant has contested this assertion. The record instead indicates that the Littrells leased their oil well to Storm Resources, which paid Herald and Guffey for their work. (Compl. ¶ 40; Def.'s Answer ¶ 10; Compl. Ex. E). The Littrells have admitted they are not insureds

17

under the Policy. (Defs.' Resp. Pl.'s Mot. Summ. J. 1). Herald, Guffey, Storm, and Steve may have been employees or members of Clinton Enterprise, but Century's coverage for these individuals is limited only to the scope of Clinton Enterprise's operations. (Compl. Ex. B, at 23-24). Storm Resources is expressly not a named insured under the Policy. (*See* Compl. Ex. B, at 2). Thus, none of these individuals or entities are insureds entitled to coverage under the terms of the Policy.

Century has provided proof demonstrating that no Defendant was acting within the scope of the Policy's coverage when Herald's accident occurred. Moreover, no Defendant has provided any evidence to show a material factual issue. Century's motion, therefore, is granted on these grounds as well.[6]

## V.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Plaintiff's Motion for Summary Judgment (DN 33) is **GRANTED**, and a declaratory judgment is entered in favor of Century because Policy No. CCP1021739 is void ab

---

[6] Defendants mention the doctrine of reasonable expectations in their responses, claiming that even if the Policy does not cover Clinton Enterprise in the underlying action, Clinton Enterprise is nonetheless entitled to coverage because it was "reasonable for [] [Storm] to believe when the insurance policy was purchased, that its provisions would insure him and his businesses against liability claims." (Def.'s Resp. Pl.'s Mot. Summ. J. 2 (citing *Woodson v. Manhattan Life Ins. Co. of N.Y.*, 743 S.W.2d 835 (Ky. 1987))). Under Kentucky law, the doctrine of reasonable expectations first requires a Court to find that an insurance policy's terms are ambiguous. *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 1999). Defendants have failed to point to any provisions in the Policy which could be considered ambiguous, and the Court is not required to search through the Policy for potentially ambiguous terms. *See In re Blazo*, 73 F.3d 361, 1995 WL 764130, at *3 (6th Cir. Dec. 27, 1995) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ." (internal quotation marks omitted) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 n.7 (5th Cir. 1992)))).

initio and Century owes no duty under Policy No. CCP1021739 to defend or indemnify Defendants in the underlying state court action.

    2.    The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

February 25, 2025

cc:    counsel of record